**JOHN R. EVANS & CO. v. THE EXPRESS et al.**

No. 221 of 1949, Admiralty.

United States District Court
E. D. Pennsylvania.

Sept. 28, 1951.

Clark, Brown, McCown, Fortenbaugh & Young, Philadelphia, Pa., for libellant.

Krusen, Evans & Shaw, Philadelphia, Pa., for respondents.

KIRKPATRICK, Chief Judge.

This is one of three suits in admiralty involving damage to cargoes of goatskins, tried at the same term of court. McNeely & Price Co. v. The Exchequer et al., D.C., 100 F.Supp. 343; McNeely & Price Co. v. The Lambrook et al., D.C., 100 F.Supp. 345. They are all governed by the same general principles of law, some of which were stated in McNeely & Price v. Exchequer, supra. They are also similar in that the evidence produced by each side is in general uncontradicted. That, of course, is not to say that the facts are undisputed. On the contrary, the controlling fact findings depend on inferences as to which there is complete disagreement.

In the present case, a consideration of "the outturn itself as evidence", The

Glasgow Maru, 2 Cir., 102 F.2d 450, 451, plus the good order receipt and clean bill of lading, leads me to the conclusion that the damage occurred while the goods were in the possession of the carrier.

█ A significant fact, not appearing in any of the other cases referred to, is that the bales in which the goatskins were packed were found to be extensively stained by rust. Rust stain is not only consistent with ship damage but usually may safely be accepted as evidence of it. These bales were stowed above pig iron in the ship's hold, although the testimony of the ship's officers was that there was adequate separation. The respondent offered evidence to the effect that the shipments came from a country in which sudden rain squalls followed by a hot sun could have wet the interior of the bales without leaving any sign on the burlap covers, which would have put the ship on notice, and also suggests that, if the wetting had occurred before loading, the burlap covers could have acquired rust stains on the ship from moisture from the interior without the necessity of any water entering the hold. I can only say that it could have happened in that way (and in two other cases in which entire flats were water stained, though not rusted, I was convinced that it did) but, under all the evidence in this case, my best judgment is that it did not.

The burlap was used or secondhand material to begin with, and was not rotted or disintegrated when the cargo was discharged, which fact, I should think, would shorten the time space within which the bales must have been wetted. The libellant's expert ventured no opinion as to the time when the wetting occurred.

█ The clean bill of lading is evidence at least of the fact that the bales when received were not rust stained. It is really impossible to say, from the mate's testimony, whether, if the bales had been delivered to the ship dry but showed rust stains, he would have insisted on a notation to that effect on his receipt. However, it should require convincing evidence to break down the presumption, already considerably limited, arising from a clean bill that packages when delivered showed no surface evidence of damage upon a reasonable inspection. Even though the practice obtaining at Calcutta may be somewhat exceptional, I do not think that a good order receipt or a clean bill of lading can properly be read to mean "standard shipping condition", a term which, from the mate's testimony, might easily contradict the apparent good order clause of the bill and receipt. Of course, the fact that the burlap is old or used does not indicate internal damage. I do not think that a carrier should be permitted to say that "good order and condition" at Calcutta covers shipments which would be considered as showing damage anywhere else. As a matter of fact, there is no direct evidence of any kind to contradict the receipt.

I affirm all the libellant's requests for findings of fact and conclusions of law.

A decree may be submitted.